John T. OXLEY, Appellant,

v.

William Hugh WILSON, a/k/a W. Hugh Wilson, a/k/a Hugh Wilson, Mary Wilson, and the City of Trinidad, Colorado, a municipal corporation, Appellees.

No. 9897.

United States Court of Appeals Tenth Circuit.

Dec. 24, 1968.

Robert A. Ruyle, Greeley, Colo. (David J. Miller, Greeley, Colo., with him on the brief), for appellant.

William F. Dwyer, Denver, Colo. (F. E. Dickerson, Denver, Colo., with him on the brief), for appellees.

Before LEWIS, SETH and HICKEY, Circuit Judges.

SETH, Circuit Judge.

The appellant as purchaser commenced this action to have specifically enforced an agreement covering the sale of land and shares in an irrigation company. The trial court denied relief and this appeal was taken. The defendants in the trial court were the sellers named in the sales agreement and the City of Trinidad. The City was the purchaser of the water rights under an agreement prior in time to the one between plaintiff-appellant and the land owners. Jurisdiction is based on diversity.

On this appeal the principal issue concerns the relationship between the agreement here sought to be enforced and the manner in which the prior agreement between the land owners and the City was performed.

The record shows that appellee, Hugh Wilson, was the owner of a farm and shares in the Model Land and Irrigation Company. The shares represented the water rights available to irrigate the farm. He was the owner by virtue of an informal agreement with his brothers and sisters except as to an undivided one-fifth interest which was conveyed by a sister to a third party. This interest, together with the farm of this third party, was thereafter conveyed to the appellant.

Mr. Wilson in May of 1966 gave an option to the City of Trinidad to buy

the shares in the irrigation company but not the land. This option was for four hundred shares at one hundred dollars a share with the condition that: "This option shall be void if not exercised by October 1, 1966." The option contained no details as to how or when the purchase price would be paid. While this option was outstanding Mr. and Mrs. Wilson signed an agreement with the appellant to sell to him the farm and the shares of stock in the irrigation company which they owned (an undivided four-fifths) for the sum of $17,-600.00. The agreement as executed contained no reference to the outstanding option given by the sellers to the City of Trinidad. The appellant knew of the option and was advised of it by the sellers before the agreement was signed. The parties concede the agreement here considered was subject to whatever rights the City had.

As the end of the option period in the Wilson-City agreement approached and other arrangements were not forthcoming, the City began somewhat frantic efforts to arrange for the funds necessary to exercise the Wilson option and also the many other options it held to purchase water shares, and to thereby secure a controlling interest in the Model Land and Irrigation Company. The City considered this of importance in order that a new dam could be constructed for water and flood control. It appears that the City was able to arrange for some $400,000 to $500,000 to make at least some initial payments on the options. The City and the stock owners then entered into new agreements dated the last day of September 1966, which purported to exercise the prior options. This second agreement with the Wilsons provided for the payment of the purchase price for the shares in several described installments including an initial payment into escrow. It also provided for the creation of this escrow in which the shares would be deposited. But more important the agent was instructed that if on October 17, 1966, 6340 or more shares of stock in the Model Land and Irrigation Company had not been delivered by the various persons from whom the City held options, then the agent was to return the shares to the depositors and return the initial escrow payment to the City. Thus the purchase was conditioned upon the City being assured that it could acquire a stated number of shares by a specified date.

It developed that a sufficient number of shares were delivered into escrow and the City proceeded with the purchases from the Wilsons and the others.

The appellees Wilson advised appellant of the September 30th agreement with the City. Thereafter the appellant commenced this suit to specifically enforce his agreement with the Wilsons. Appellant asserted, in effect, that the initial Wilson-City option had not been exercised, or at least not in the manner originally provided, and instead a new agreement had been negotiated which was not permitted by reason of the agreement with him.

The trial court found that the September 30th Wilson-City agreement was a "continuation" of the original Wilson-City option of May 2, 1966. The trial court also found:

"* * * The real intention of the parties was that the property would be sold by the defendants Wilson to the plaintiff Oxley for the lesser amount of $17,600.00 only if the City failed to purchase the water rights at the higher amount of $31,900.00."

The trial court also found:

"We are of the opinion that the only inference properly drawn is to the effect that if the City did not acquire the water rights, then Oxley would acquire them and the real estate."

As indicated above the written Wilson-Oxley agreement did not mention the option of the City, thus its intended effect was developed by the testimony of the witnesses. From the above quotations it is apparent that the trial court considered the Wilson-Oxley agreement

was "subject to" a broad construction of the City's rights or position under its option or as a broad construction of the freedom given by the intention of the parties to the appellee to effect a sale to the City. The trial court's memorandum indicates that this position is based in some part upon the large disparity in the purchase prices in the two agreements, with the finding that the sellers would only intend to sell at the lower figure if the City "failed" to purchase. The record shows that the control of the irrigation company had become a real issue in the community and the desire of the City and associated organizations to gain control was demonstrated.

The record shows that appellant purchased other farms in the area for about the same per acre and per share figure as contained in the Wilson-Oxley agreement. It also shows that the City was prepared to pay a much higher per share price in order to obtain control of the company.

The basic issue on this appeal is whether, within the intention of the parties, the City exercised its right to purchase under its original Wilson-City agreement, or whether its September 30th agreement with the condition of corporate control and the installment payments was such a change as to violate the rights of appellant acquired under his agreement with the Wilsons.

In the initial consideration of the issues, the finding of the trial court giving broad scope to what the Wilson-Oxley agreement was intended to be "subject to" is of primary importance.

■ The evidence shows that the appellant was of the opinion at the time he agreed with the Wilsons that the City could not raise the money to exercise the many options, and he was apparently not impressed by the sketchy form of the City's option agreement. In the absence of a reference to the prior option to the City, the issue as to just what the Wilson-Oxley agreement was "subject to" depended upon the testimony of the witnesses. This testimony supports the position that appellant's right to purchase was to become operative after the City " * * * failed to purchase the water rights at the higher amount of $31,-900.00," or " * * * if the City did not acquire the water rights * * *." Under this intention the City and the Wilsons had some room to define the terms of the original option, and to insert the condition. Such a condition of control was basic to the purpose of the City in acquiring shares. This condition did not seriously affect the position of appellant as a practical matter, although it could have postponed the day when it could be said with certainty that the City had "failed to purchase" or had purchased the shares of Wilson. This possible delay under these circumstances, and taken with a broad view of the area covered by the rights of the City as they related to appellant, is not considered to be outside the "subject to" condition of the Wilson-Oxley agreement as it was established at the trial. The trial court's finding as to intention is supported by the record and its conclusion is correct.

■ We are urged by the appellant to apply the doctrine of equitable conversion and to hold that the appellees Wilson could not enter into the second agreement with the City to vary the initial option. The appellant cites a series of cases on this point including Amster v. Tenney, 139 N.J.Eq. 335, 51 A.2d 257; Millard v. Martin, 28 R.I. 494, 68 A. 420, and others. These authorities as well as the cited texts concern absolute contracts to purchase preceded by specifically defined options. There is no question about the existence and application of the doctrine, but consideration must first be given to the latitude, if any, that was afforded, in the understanding of the parties, to the seller in effecting a sale to the holder of the option. It is not here necessary to consider the possible conditional nature of the appellant's agreement to buy, but in view of what has been said above it is apparent that the doctrine of equitable conversion must be applied

upon or within the particular "subject to" understanding of the parties. The seller certainly has such room within the condition to work with the option holder toward a sale to him. In this case the amount of this room to work was established by the evidence and followed by the trial court's findings. This room developed was of considerable size and we, of course, will accept these findings, since they are supported by the record. System Investment Corp. v. Montview Acceptance Corp., 355 F.2d 463 (10th Cir.), and subsequent cases.

The arguments and the cases relating to the exact performance to be required of an option holder need not be considered for the same reasons stated above.

Affirmed.